H7PVOKET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IFEANYICHUKWU E. OKEKE, ET AL,

                    Plaintiffs,

            v.                          16 CV 570 (CM)

NEW YORK PRESBYTERIAN
HOSPITAL,

                    Defendant.          JURY TRIAL

------------------------------x
                                        New York, N.Y.
                                        July 25, 2017
                                        11:08 a.m.

Before:

                    HON. COLLEEN MCMAHON,

                                        District Judge

                        APPEARANCES

OFODILE & ASSOCIATES
        Attorneys for Plaintiffs
BY:  ANTHONY C. OFODILE
        -AND-
LAW OFFICE OF OSONDU ANYADIKE
BY:  OSONDU ANYADIKE

EPSTEIN BECKER & GREEN
        Attorneys for Defendant
BY:  BRIAN G. CESARATTO
        STUART M. GERSON
        ANN K. MAHONEY

1    (Trial resumed; jury not present)

2    (At 11:00 a.m., a note was received from the jury)

3    THE COURT:  Case on trial continued.  Counsel are

4  present, the jurors are not present at 11 o'clock this morning.

5    The jurors have sent a note.  They want:  "The

6  transcript from Mr. Mahmoud on 7/17/17."

7    That's his direct; they want Mr. Mahmoud's direct.

8    MR. OFODILE:  Okay.

9    THE COURT:  It's pages 361 to 416 of the transcript.

10    My proposal is that we copy it and give it to them.

11    MR. GERSON:  Why not?

12    MR. OFODILE:  Yes, your Honor.

13    THE COURT:  There are a few objections in it, who

14  cares; I ruled on them; they know what that means.

15    Let's just do it, okay?

16    MR. GERSON:  Agreed.

17    MR. OFODILE:  Yes.

18    THE COURT:  Done.  It's Court Exhibit 4.

19    (Recess pending verdict)

20    (At 12:10 p.m., a note was received from the jury)

21    THE COURT:  Case on trial continues.  The parties are

22  present, the jurors are not present.

23    At 12:10, Jeremy was handed a note that said:  "We,

24  the jury, are filling out the verdict sheet and will be ready

25  at 12:30."

1    (Jury present)

2    THE COURT:  Do you guys send color-coded memos?

3    THE JURY:  No.

4    THE COURT:  It's really uncanny.

5    Have a seated.  It's not the first time.

6    Ladies and gentlemen, I have a note saying, We are

7    filling out the verdict sheet and will be ready at 12:30.

8    You can't imagine what happiness this is.  At 12:28 we

9    adjourned a 90-minute criminal conference.  So timing is

10   everything, okay?

11   Therefore, I believe, I'm correct in saying you have

12   reached a verdict.

13   THE JURY:  Yes, we have.

14   THE COURT:  All right.

15   Jeremy, will you please retrieve the verdict sheet

16   from the foreperson of the jury.

17   (Pause)

18   THE COURT:  Would you please return that to the

19   foreperson and would you please take the verdict.

20   Will the foreperson please rise.

21   THE LAW CLERK:  Beginning with Section 1, Plaintiff

22   Okeke.  Under the Age Discrimination and Employment Act,

23   federal law, has Mr. Okeke proved by a preponderance of the

24   evidence that the hospital discriminated against him on the

25   basis of his age as to his termination?

H7PVOKET

1    THE FOREPERSON:  No.

2    THE LAW CLERK:  As to training?

3    THE FOREPERSON:  No.

4    THE LAW CLERK:  As to overtime opportunities?

5    THE FOREPERSON:  No.

6    THE LAW CLERK:  Under the New York City Human Rights

7    Law, city law, has Mr. Okeke proved by a preponderance of the

8    evidence that the hospital --

9    THE COURT:  Slow down.  The poor court reporter,

10   Jeremy.

11   THE LAW CLERK:  Sorry.

12   By a preponderance of the evidence that the hospital

13   discriminated against him on the basis of his age as to his

14   termination?

15   THE FOREPERSON:  Yes.

16   THE LAW CLERK:  As to training?

17   THE FOREPERSON:  Yes.

18   THE LAW CLERK:  Has Mr. Okeke proved by a

19   preponderance of the evidence that he experienced a hostile

20   work environment on account of his age?

21   THE FOREPERSON:  Yes.

22   THE LAW CLERK:  What amount of damages, if any, do you

23   award Mr. Okeke?

24   Back pay?

25   THE FOREPERSON:  $188,000.

1    THE LAW CLERK:  As to emotional distress?

2    THE COURT:  Front pay.

3    THE LAW CLERK:  As to front pay?

4    THE FOREPERSON:  No.

5    THE LAW CLERK:  As to emotional distress?

6    THE FOREPERSON:  $20,000.

7    THE LAW CLERK:  Did the hospital act with malice or

8    reckless indifference to Mr. Okeke's legal rights such that

9    punitive damages are appropriate?

10    THE FOREPERSON:  No.

11    THE COURT:  I'm going to do this one plaintiff at a

12    time.  I assume that you want the jury polled on the verdicts?

13    MR. GERSON:  Yes, your Honor.

14    THE COURT:  Ladies and gentlemen of the jury, harken

15    to your verdict as it stands recorded.

16    You and each of you say as to the Plaintiff Okeke that

17    he has failed to prove by a preponderance of the evidence that

18    the hospital discriminated against him on the basis of his age

19    under federal law, that he proved by a preponderance of the

20    evidence that the hospital discriminated against him on the

21    basis of his age as to termination, training, and hostile work

22    environment under the law of the City of New York, and you have

23    awarded him back pay damages of $188,000, the damages for

24    emotional distress of $20,000, and no punitive damages.

25    Juror No. 1, is that your verdict as to Mr. Okeke?

1   JUROR:  Yes.

2   THE COURT:  Juror No. 2, is that your verdict?

3   JUROR:  Yes.

4   THE COURT:  Juror No. 3, is that your verdict?

5   JUROR:  Yes.

6   THE COURT:  Juror No. 4, is that your verdict?

7   JUROR:  Yes.

8   THE COURT:  Juror No. 5, is that your verdict?

9   Juror No. 5, is that your verdict?

10   JUROR:  Yes.

11   THE COURT:  Juror No. 6, is that your verdict?

12   JUROR:  Yes.

13   THE COURT:  Juror No. 7, is that your verdict?

14   JUROR:  Yes.

15   THE COURT:  Juror No. 8, is that your verdict?

16   JUROR:  Yes.

17   THE COURT:  So say you and so say you all.

18   Let's turn now to the plaintiff --

19   MR. GERSON:  Your Honor, just to interject, I wouldn't

20   mind if you did this once cumulatively at the end.

21   THE COURT:  I'd like to do it separately.  This is one

22   of the few times when I actually get to say what's going to

23   happen.

24   As to the plaintiff Jerry Baglione.

25   THE LAW CLERK:  As to the plaintiff Jerry Baglione,

1    under the Age Discrimination and Employment Act, has

2    Mr. Baglione proved by a preponderance of the evidence that the

3    hospital discriminated against him on the basis of his age as

4    to his termination?

5              THE FOREPERSON:  No.

6              THE LAW CLERK:  As to training?

7              THE FOREPERSON:  No.

8              THE LAW CLERK:  As to overtime opportunities?

9              THE FOREPERSON:  No.

10             THE LAW CLERK:  Under the New York City Human Rights

11   Law, has Mr. Baglione proved by a preponderance of the evidence

12   that the hospital discriminated against him on the basis of his

13   age as to his termination?

14             THE FOREPERSON:  Yes.

15             THE LAW CLERK:  As to training?

16             THE FOREPERSON:  Yes.

17             THE LAW CLERK:  Has Mr. Baglione proved by a

18   preponderance of the evidence that he experienced a hostile

19   work environment on account of his age?

20             THE FOREPERSON:  Yes.

21             THE LAW CLERK:  What amount of damages, if any, do you

22   award to Mr. Baglione?

23             Back pay?

24             THE FOREPERSON:  $123,000.

25             THE LAW CLERK:  Front pay?

1    THE FOREPERSON:  None.

2    THE LAW CLERK:  Emotional distress?

3    THE FOREPERSON:  $20,000.

4    THE LAW CLERK:  Did the hospital act with malice or

5    reckless indifference to Mr. Baglione's legal rights such that

6    punitive damages are appropriate?

7    THE FOREPERSON:  No.

8    THE COURT:  Ladies and gentlemen of the jury, harken

9    to your verdict as to Mr. Baglione has failed to prove by a

10   preponderance of the evidence that the hospital discriminated

11   him on any basis under federal -- on the basis of his age as to

12   any termination, training, or overtime opportunities under

13   federal law, but did prove by a preponderance of the evidence

14   that the hospital discriminated against him on the basis of his

15   age as to termination, training, and hostile work environment.

16   And you have awarded him back pay of $123,000, no front pay,

17   emotional distress damages of $20,000, and no punitive damages.

18   Juror No. 1, is that your verdict?

19   JUROR:  Yes.

20   THE COURT:  Juror No. 2, is that your verdict?

21   JUROR:  Yes.

22   THE COURT:  Juror No. 3, is that your verdict?

23   JUROR:  Yes.

24   THE COURT:  Juror No. 4, is that your verdict?

25   JUROR:  Yes.

1    THE COURT:  Juror No. 5, is that your verdict?

2    JUROR:  Yes.

3    THE COURT:  Juror No. 6, is that your verdict?

4    JUROR:  Yes.

5    THE COURT:  Juror No. 7, is that your verdict?

6    JUROR:  Yes.

7    THE COURT:  Juror No. 8, is that your verdict?

8    JUROR:  Yes.

9    THE COURT:  So say you and so say you all.

10   Let's move on to the plaintiff Iqbal Bajwa?

11   THE LAW CLERK:  As to Plaintiff Bajwa, under the Age

12   Discrimination and Employment Act, has Mr. Bajwa proved by a

13   preponderance of the evidence that the hospital discriminated

14   against him on the basis of his age as to his termination?

15   FOREPERSON:  Yes.  Oh, I'm sorry.  No.

16   THE COURT:  As to his termination?

17   FOREPERSON:  His termination, no.

18   THE COURT:  Thank you.

19   THE LAW CLERK:  As to a promotion?

20   THE FOREPERSON:  No.

21   THE LAW CLERK:  As to training?

22   THE FOREPERSON:  No.

23   THE LAW CLERK:  As to overtime opportunities?

24   THE FOREPERSON:  No.

25   THE LAW CLERK:  Under the New York City Human Rights

H7PVOKET

1  Law, has Mr. Bajwa proved by a preponderance of the evidence

2  that the hospital discriminated against him on the basis of his

3  age as to his termination?

4          THE FOREPERSON:  Yes.

5          THE LAW CLERK:  As to a promotion?

6          THE FOREPERSON:  Yes.

7          THE LAW CLERK:  As to training?

8          THE FOREPERSON:  Yes.

9          THE LAW CLERK:  Has Mr. Bajwa proved by a

10  preponderance of the evidence that he experienced a hostile

11  work environment on account of his age?

12          THE FOREPERSON:  Uh-oh.

13          THE COURT:  This is why do this.  I need you all to go

14  back to the jury room and make sure that you've filled out the

15  verdict sheet correctly in accordance with your verdict and

16  you'll come right back out.

17          JUROR:  Okay.

18          (Jury excused)

19          (Jury present)

20          THE COURT:  I just had a feeling that something like

21  this was going to happen, which is why I want to do them very

22  clearly one-by-one.

23          All right.  Let's start again with Mr. Bajwa.

24          THE LAW CLERK:  Under the Age Discrimination and

25  Employment Act, has Mr. Bajwa proved by a preponderance of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   evidence that the hospital discriminated against him on the

2   basis of his age as to his termination?

3           THE FOREPERSON:  No.

4           THE LAW CLERK:  As to a promotion?

5           THE FOREPERSON:  No.

6           THE LAW CLERK:  As to training?

7           THE FOREPERSON:  No.

8           THE LAW CLERK:  As to overtime opportunities?

9           THE FOREPERSON:  No.

10          THE LAW CLERK:  Under the New York City Human Rights

11  Law, has Mr. Bajwa proved by a preponderance of the evidence

12  that the hospital discriminated against him on the basis of his

13  age as to his termination?

14          THE FOREPERSON:  Yes.

15          THE LAW CLERK:  As to a promotion?

16          THE FOREPERSON:  No.

17          THE LAW CLERK:  As to training?

18          THE FOREPERSON:  Yes.

19          THE LAW CLERK:  Has Mr. Bajwa proved by a

20  preponderance of the evidence that he experienced a hostile

21  work environment on account of his age?

22          THE FOREPERSON:  Yes.

23          THE LAW CLERK:  What amount of damages, if any, do you

24  award to Mr. Bajwa?

25          Back pay?

H7PVOKET

1   THE FOREPERSON:  $196,000.

2   THE LAW CLERK:  Front pay?

3   THE FOREPERSON:  None.

4   THE LAW CLERK:  Emotional distress?

5   THE FOREPERSON:  $20,000.

6   THE LAW CLERK:  Did the hospital act with malice or

7   reckless indifference to Mr. Bajwa's legal rights such that

8   punitive damages are appropriate?

9   THE FOREPERSON:  No.

10   THE COURT:  Harken to your verdict as it stands

11   recorded.

12   You find that plaintiff Iqbal Bajwa has failed to

13   prove by a preponderance of the evidence that the hospital

14   discriminated on any basis, on the basis of his age, under

15   federal law, but that he has proved by a preponderance of the

16   evidence that the hospital discriminated against him on the

17   basis of his age as to his termination, training, and hostile

18   work environment, but not as to a promotion.

19   And you further award Mr. Bajwa damages of back pay in

20   the amount of $196,000, no front pay, $20,000 in emotional

21   distress damages, and no punitive damages.

22   Juror No. 1, is that your verdict?

23   JUROR:  Yes.

24   THE COURT:  Juror No. 2, is that your verdict?

25   JUROR:  Yes.

1    THE COURT:  Juror No. 3, is that your verdict?

2    JUROR:  Yes.

3    THE COURT:  Juror No. 4, is that your verdict?

4    JUROR:  Yes.

5    THE COURT:  Juror No. 5, is that your verdict?

6    JUROR:  Yes.

7    THE COURT:  Juror No. 6, is that your verdict?

8    JUROR:  Yes.

9    THE COURT:  Juror No. 7, is that your verdict?

10   JUROR:  Yes.

11   THE COURT:  Juror No. 8, is that your verdict?

12   JUROR:  Yes.

13   THE COURT:  So say you, so say you all.

14   Let's proceed to the plaintiff Adel Mahmoud.

15   THE LAW CLERK:  Under the Age Discrimination and

16   Employment Act, has Mr. Mahmoud proved by a preponderance of

17   the evidence that the hospital discriminated against him on the

18   basis of his age as to his termination?

19   FOREPERSON:  No.

20   THE LAW CLERK:  As to training?

21   THE FOREPERSON:  No.

22   THE LAW CLERK:  As to overtime opportunities?

23   THE FOREPERSON:  No.

24   THE LAW CLERK:  Under the New York City Human Rights

25   Law, has Mr. Mahmoud proved by a preponderance of the evidence

1    that the hospital discriminated against him on the basis of his

2    age as to his termination?

3                    THE FOREPERSON:  Yes.

4                    THE LAW CLERK:  As to training?

5                    THE FOREPERSON:  Yes.

6                    THE LAW CLERK:  Has Mr. Mahmoud proved by a

7    preponderance of the evidence that he experienced a hostile

8    work environment on account of his age?

9                    THE FOREPERSON:  Yes.

10                   THE LAW CLERK:  What amount of damages, if any, do you

11   award to Mr. Mahmoud as to back pay?

12                   THE FOREPERSON:  $125,000.

13                   THE LAW CLERK:  As to front pay?

14                   THE FOREPERSON:  None.

15                   THE LAW CLERK:  As to emotional distress?

16                   THE FOREPERSON:  $20,000.

17                   THE LAW CLERK:  Did the hospital act with malice or

18   reckless indifference to Mr. Mahmoud's legal rights such that

19   punitive damages are appropriate?

20                   THE FOREPERSON:  No.

21                   THE COURT:  Jurors, harken to your verdict.

22                   You find that Mr. Mahmoud has not proved by a

23   preponderance of the evidence that the hospital discriminated

24   against him on the basis of age under federal law as to his

25   termination, training, or overtime opportunities; that he has

1  proved by a preponderance of the evidence that the hospital

2  discriminated against him on the basis of his age as to his

3  termination, training, and hostile work environment; and you

4  award him backpay damages in the amount of $125,000; front pay,

5  none; and emotional distress damages in the amount of $20,000,

6  but no punitive damages.

7              Juror No. 1, is that your verdict?

8              JUROR:  Yes.

9              THE COURT:  Juror No. 2, is that your verdict?

10             JUROR:  Yes.

11             THE COURT:  Juror No. 3, is that your verdict?

12             JUROR:  Yes.

13             THE COURT:  Juror No. 4, is that your verdict?

14             JUROR:  Yes.

15             THE COURT:  Juror No. 5, is that your verdict?

16             JUROR:  Yes.

17             THE COURT:  Juror No. 6, is that your verdict?

18             JUROR:  Yes.

19             THE COURT:  Juror No. 7, is that your verdict?

20             JUROR:  Yes.

21             THE COURT:  Juror No. 8, is that your verdict?

22             JUROR:  Yes.

23             THE COURT:  So say you and so say you all.

24             As to plaintiff Naeem Qureshi.

25             THE LAW CLERK:  Under the Age Discrimination and

1  Employment Act, has Mr. Qureshi proved by a preponderance of

2  the evidence that the hospital discriminated against him on the

3  basis of his age as to his termination?

4          FOREPERSON:  No.

5          THE LAW CLERK:  As to training?

6          THE FOREPERSON:  No.

7          THE LAW CLERK:  As to overtime opportunities?

8          THE FOREPERSON:  No.

9          THE LAW CLERK:  Under the New York City Human Rights

10  Law, has Mr. Qureshi proved by a preponderance of the evidence

11  that the hospital discriminated against him on the basis of his

12  age as to his termination?

13          THE FOREPERSON:  Yes.

14          THE LAW CLERK:  As to training?

15          THE FOREPERSON:  Yes.

16          THE LAW CLERK:  Has Mr. Qureshi proved by a

17  preponderance of the evidence that he experienced a hostile

18  work environment on account of his age?

19          THE FOREPERSON:  Yes.

20          THE LAW CLERK:  What amount of damages, if any, do you

21  award Mr. Qureshi as to back pay?

22          THE FOREPERSON:  $125,000.

23          THE LAW CLERK:  As to front pay?

24          THE FOREPERSON:  None.

25          THE LAW CLERK:  As to emotional distress?

1    THE FOREPERSON:  $20,000.

2    THE LAW CLERK:  Did the hospital act with malice or

3 reckless indifference to Mr. Qureshi's legal rights such that

4 punitive damages are appropriate?

5    THE FOREPERSON:  No.

6    THE COURT:  Harken to your verdict, ladies and

7 gentlemen of the jury.  You find that Mr. Qureshi has not

8 proven by a preponderance of the evidence that the hospital

9 discriminated against him as to his termination, training, or

10 overtime opportunities on the basis of his age under federal

11 law, but that he has proven by a preponderance of the evidence

12 that the hospital discriminated against him on the basis of his

13 age as to termination, training, and hostile work environment

14 under New York City law.  You have awarded back pay in the

15 amount of $125,000, no front pay, and emotional distress

16 damages of $20,000, no punitive damages.

17    Juror No. 1, is that your verdict?

18    JUROR:  Yes.

19    THE COURT:  Juror No. 2, is that your verdict?

20    JUROR:  Yes.

21    THE COURT:  Juror No. 3, is that your verdict?

22    JUROR:  Yes.

23    THE COURT:  Juror No. 4, is that your verdict?

24    JUROR:  Yes.

25    THE COURT:  Juror No. 5, is that your verdict?

1    JUROR:  Yes.

2    THE COURT:  Juror No. 6, is that your verdict?

3    JUROR:  Yes.

4    THE COURT:  Juror No. 7, is that your verdict?

5    JUROR:  Yes.

6    THE COURT:  Juror No. 8, is that your verdict?

7    JUROR:  Yes.

8    THE COURT:  So say you and so say you all.

9    Finally as to the plaintiff Abel De La Trinidad.

10   THE LAW CLERK:  Under the Age Discrimination and

11   Employment Act, has Mr. De La Trinidad proved by a

12   preponderance of the evidence that the hospital discriminated

13   against him on the basis of his age as to his termination?

14   FOREPERSON:  No.

15   THE LAW CLERK:  As to training?

16   THE FOREPERSON:  No.

17   THE LAW CLERK:  As to overtime opportunities?

18   THE FOREPERSON:  No.

19   THE LAW CLERK:  Under the New York City Human Rights

20   Law, has Mr. De La Trinidad proved by a preponderance of the

21   evidence that the hospital discriminated against him on the

22   basis of his age as to his termination?

23   THE FOREPERSON:  Yes.

24   THE LAW CLERK:  As to training?

25   THE FOREPERSON:  Yes.

1              THE LAW CLERK:  Has Mr. De La Trinidad proved by a

2     preponderance of the evidence that he experienced a hostile

3     work environment on account of his age?

4              THE FOREPERSON:  Yes.

5              THE LAW CLERK:  What amount of damages, if any, do you

6     award to Mr. De La Trinidad for back pay?

7              THE FOREPERSON:  $141,000.

8              THE LAW CLERK:  Front pay?

9              THE FOREPERSON:  None.

10             THE LAW CLERK:  Emotional distress?

11             THE FOREPERSON:  $20,000.

12             THE LAW CLERK:  Did the hospital act with malice or

13    reckless indifference to Mr. De La Trinidad's legal rights such

14    that punitive damages are appropriate?

15             THE FOREPERSON:  No.

16             THE COURT:  Ladies and gentlemen of the jury, harken

17    to your verdict as it stands recorded.

18             You hold that the plaintiff Abel De La Trinidad has

19    not proved by a preponderance of the evidence that the hospital

20    discriminated against him as to his termination, training, or

21    overtime opportunities on the basis of his age under federal

22    law, but that he did prove that the hospital discriminated

23    against him on the basis of his age as to termination,

24    training, and hostile work environment under New York City law.

25    And you have awarded him $141,000 in back pay, emotional

H7PVOKET

distress damages of $20,000, no front pay, and no punitive
damages.

        Juror No. 1, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 2, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 3, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 4, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 5, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 6, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 7, is that your verdict?

        JUROR:  Yes.

        THE COURT:  Juror No. 8, is that your verdict?

        JUROR:  Yes.

        THE COURT:  So say you and so say you all.

        Jeremy, if you'll please recover the verdict sheet.
And the foreperson may be seated.

        Ladies and gentlemen, it's time to say good-bye.  And
I want to say something that I say at every trial, but at this
trial I want to say something special.  And I speak not just
for myself, but for all of the lawyers in the case.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    Everybody hates the concept of jury service.  And a

2    lot of people do a lot of things to try to get out of jury

3    service.  And when they have an opportunity to get off a jury,

4    almost everybody takes advantage of that opportunity.

5    In this extraordinary case, the parties decided to

6    seat Juror No. 4 knowing that she had a hard-and-fast deadline

7    to leave.  And we all understood that if there was no verdict

8    by that time, which was the end of last week, that we would

9    just have to say good-bye to Juror No. 4.

10    It was unimaginable to me last Thursday afternoon when

11    we asked Juror No. 4 to stay that what would happen happened.

12    That she would say that she had cleared her schedule so that

13    she could deliberate with you.

14    Ma'am, I don't know how to thank you, but I have to

15    tell you, I commend you for your citizenship and for your

16    devotion.  I love juries.  I've loved juries for my whole

17    career, but especially because over 20 years ago now I headed a

18    commission that makes an informed state jury service.  And I

19    talked to a lot of jurors all around the state, I got to know a

20    lot of people who have been on juries, and it's given me kind

21    of a special thing for juries.  They never cease to surprise me

22    with their devotion.  But this really, really was commented on

23    by all of us.  And I want it on the record and I want you to

24    know how grateful we are to you for having stuck with it.

25    Thank you.

1    Applause to you all.

2    What I usually say at the end of the case is there was

3    a very famous judge who sat on this Court for 35 years and who

4    was one of the great judges of the United States District

5    Courts, recognized nationwide, and way up to the Supreme Court

6    level, for his brilliance.  His name was Edward Weinfeld.

7    Really an extraordinary judge.

8    Those of us who sit on the Court who remember Judge

9    Weinfeld -- I'm one of those people; I had the experience of

10   appearing before him -- try to imitate him in many things

11   because he was just -- in his brilliance and his demeanor and

12   his dedication to the job, he was the embodiment of what a

13   federal court judge should be.  There's only one thing I won't

14   mimic of Judge Weinfeld's, and that is at the end of the case

15   he would look at the jurors -- he was famous for this -- he

16   would say, I suppose you expect to be thanked.  You will wait

17   in vain for thanks from me because you, like I, must take your

18   satisfaction from the knowledge that you have done your duty to

19   the best of your ability.

20   I don't feel that way for precisely the reason that I

21   gave.  There's so many people who will do anything to get off

22   jury service:  Answer questions strangely, who will throw

23   summonses in the waste basket, who just won't step up to the

24   plate and do one of the only two things that our country

25   ordinarily asks us to do, pay taxes and serve on a jury.

1     And we can continue to function as a nation in

2  significant part because people like you are willing to take

3  what's turned out to be two and-a-half weeks out of your very

4  busy lives to sit here and listen to dispute among people that

5  you've never met before, you're never going to meet again, that

6  you have no personal interest in, and you think about it, you

7  parse it, and you resolve it.  It is an extraordinary function

8  that you perform; it's an extraordinary role that you play.

9     So I do thank you.  And I thank you on behalf of my

10  whole staff and the lawyers for the parties and the parties and

11  all of us here in the Southern District of New York.  I thank

12  you very much for having served on this jury.

13     You are excused.

14     If you'll give me five minutes with the lawyers, I'd

15  like to come back and shake hands with you before we go.  Okay?

16     Thank you.

17     (Jury discharged)

18     THE COURT:  Okay.  What can I expect?

19     MR. GERSON:  For me to think about it.

20     THE COURT:  Okay.  How many days do you have?  Ten?

21     MR. GERSON:  Ten.

22     THE COURT:  Right.  Good.

23     Because if you're going to make a motion, I want

24  Jeremy to be here to decide it.  And Jeremy will not be with me

25  forever.

1    MR. GERSON:  Well, we wish him well wherever he is.

2    THE COURT:  He's there in his accustomed seat.

3    So I'm not going to extend the ten days, all right?

4    MR. GERSON:  I have no problem with that.

5    THE COURT:  I understand.  I understand that you need

6    to consult --

7    MR. GERSON:  I tend not to shoot from the hip.

8    THE COURT:  No, no, you need to consult with your

9    client.

10    You'll have an attorneys' fees motion?

11    MR. OFODILE:  Yes, your Honor.  I don't know when the

12    Court will be entering judgment.

13    THE COURT:  Well, first of all, I have to see if there

14    are going to be any post-verdict motions.  I'd like from you an

15    attorneys' fees motion, which I'd appreciate if you would file

16    within ten days.  You'll be allowed to amend it if there is a

17    post-verdict motion, okay?

18    MR. OFODILE:  Within ten days from the day of entering

19    of judgment that my time starts to run or time to file the

20    motion starts to run.  The reason I'm asking is that I'm going

21    on vacation on Saturday and I will be away for nine days.

22    THE COURT:  Okay.  Go on vacation.

23    MR. OFODILE:  Yes, Judge.

24    THE COURT:  All right.

25    Gentlemen, the jury has spoken.  May you take

1    satisfaction in what the jury said.

2            Okay.  Thank you, all.

3            MR. GERSON:  Thank you, your Honor.

4            (Trial concluded)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25